UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- x
                                             :

STATE OF NEW YORK AND CITY OF NEW
YORK, *ex rel.* BRIAN ARYAI,

                                Plaintiffs/Relator,

                    against

SKANSKA; TURNER CONSTRUCTION;
TISHMAN CONSTRUCTION CORPORATION;
PLAZA CONSTRUCTION CORPORATION;
HUNT-BOVIS; TISHMAN/WASHINGTON
GROUP; TISHMAN/HARRIS; PHOENIX
CONSTRUCTORS, FLUOR ENTERPRISES,
INC., SLATTERY SKANSKA, INC., AND
BOVIS LEND LEASE, LMB, INC., SLATTERY
SKANSKA/EDWARDS & KELSEY DESIGN-
BUILD; S3 TUNNEL CONSTRUCTORS,
SKANSKA USA CIVIL NORTHEAST,
SCHIAVONE CONSTRUCTION AND J.F. SHEA;
TISHMAN SPEYER; HUNTER ROBERTS
CONSTRUCTION GROUP; GRANITE
NORTHEAST; INTERNATIONAL UNION OF
OPERATING ENGINEERS LOCAL 14; LOCAL
79 MASON TENDERS' DISTRICT COUNCIL
OF GREATER NEW YORK; AND NEW YORK
CITY DISTRICT COUNCIL OF CARPENTERS
LOCAL 1536,

                        Defendants.

-------------------------------------------------------------- x

Civil Action No.

## NOTICE OF REMOVAL

       Defendant Construction and General Building Laborers' Local 79 ("Local 79")

(sued as "Local 79 Mason Tenders' District Council of Greater New York") pursuant to 28

U.S.C. § 1441, hereby removes the above-captioned case to this Court from the Supreme Court

of the State of New York.

       In support of this notice, Local 79 states:

1.     On or about June 14, 2018, Plaintiffs/Relator State of New York and City of New York, ex rel. Brian Aryai filed an Amended Complaint in *State of New York and City of New York, ex rel. Brian Aryai v. Skanska, et al.,* Index No. 108471/09, in the Supreme Court of the State of New York, County of New York.  A copy of the summons and Amended Complaint are attached hereto as Exhibit A.

2.     On September 13, 2018, Defendant Local 79 received a copy of the summons and Amended Complaint in that case.

3.     The documents attached as Exhibit A constitute all of the process and pleadings in this action served upon Local 70 to date, as required by 28 U.S.C. §1446(a).

4.     This Court is the United States District Court within whose district the case is pending.

5.     Plaintiffs/Relator's action may be removed to the United States District Court for the Southern District of New York pursuant to 28 U.S.C. §§ 1331, 1337 and 1441, and 39 U.S.C. § 1208 because it arises under the federal labor laws of the United States.

6.     Plaintiffs/Relator allege that construction companies working for federal, state and municipal governmental entities submitted false and fraudulent requests for payment based on "inflated payroll records" involving union workers, including workers represented by Local 79.  Amended Complaint ¶ 3.

7.     Plaintiffs/Relator allege that "Union foreman routinely submitted two (2) hours per day of overtime to the Defendants, even though the individuals did not work the overtime hours."  Amended Complaint ¶ 4.

8.    Plaintiffs/Relator allege that Local 79 and the other defendants participated in the presentation of false claims for payment in violation of the New York False Claims Act and the New York City Administrative Code.  Amended Complaint ¶¶ 96-107.

9.    As Plaintiffs/Relator acknowledge, the terms and conditions of employment of Local 79 members are governed by a collective bargaining agreement.  Amended Complaint ¶ 78.

10.    Federal courts are authorized under Section 301 of the LMRA, 29 U.S.C. § 185, to fashion a federal common law applicable to claims arising under collective bargaining agreements.  That body of law includes the doctrine of "complete preemption" which provides for the removal of state claims to federal court where resolution of the claims will require interpretation of a collective bargaining agreement.

11.    The resolution of the claims against Local 79 in the case clearly will require the interpretation of the applicable collective bargaining agreement.  Local 79 is being sued because employees it represents and who worked under collective bargaining agreements with various defendant employers were supposedly paid in excess of the contract rates, which "labor costs" were supposedly billed to third parties.  Plaintiffs/Relator are arguing that Local 79 should have done something about that, when the union's only obligations to the workers and employers arose out of the collective bargaining agreements.  The calims against Local 79 will require the interpretation of the collective bargaining agreement whether the agreement creates any obligations by and between the Union and third-party clients of the employers.  *See United Steelworkers of Am. v. Rawson*, 495 U.S. 362 (1990) (finding that a claim against a union by a third party based on a collective bargaining agreement is actionable only where there is specific language in the agreement creating such a duty).

12.    Likewise, resolution of the claims against Local 79 will require interpretation of the collective bargaining agreement to determine whether it provides a minimum rate of pay for represented employees or establishes a precise rate that cannot be exceeded.  It is Local 79's position that its collective bargaining agreements set minimums and that the Union has no obligation to, for example, file grievances against employers if they are paying workers above scale.

13.    Plaintiffs/Relator's claim is thus completely preempted by federal law, namely Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. §185.  *See Vera v. Saks & Co.* 335 F.3d 109 (2d Cir. 2003); *Hess v. B&B Plastics Division of Metal Cladding, Inc.*, 862 F.Supp. 31 (W.D.N.Y.1994).

14.    In addition, resolution of Plaintiffs/Relator's claim directly involves Local 79's relationship to the workers it represents.  In essence, Plaintiffs/Relator's claim that workers inflated their hours and that Local 79 was somehow obligated to investigate, intervene and reduce the hours submitted by workers.

15.    As such, claims against Local 79 are preempted by the federal duty of fair representation.  The federal doctrine of "the duty of fair representation" unmistakably preempts all state law claims that involve a union's relationship to the employees it represents in collective bargaining.  *See e.g. Nelson v. Stewart*, 422 F3d 463, 469-470 (7th Cir 2005) ("courts of appeals have concluded that the statutory duty of fair representation has, in the context of removal, the same preemptive force as does section 301"); *Cahoon v IBEW Local 261*, 175 F.Supp 2d 220, 225 (D Conn 2001) ("the DFR effects the same complete preemption as § 301"); *IBEW v. Hechler*, 481 U.S. 851, 856-62 (1987); *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 208-13

(1985); *Olivia v. Wine, Liquor & Distillery Workers Union, Local One*, 651 F.Supp. 369, 371 (S.D.N.Y. 1987); *Harb v. UPS*, 123 L.R.R.M. (BNA) 2968, 2972 (S.D.N.Y. 1985).

16.    This Notice of Removal is timely filed pursuant to 28 U.S.C. §1146(b) in that it is filed within thirty (30) days after Local 79 first received a copy of the summons and Amended Complaint.

17.    All defendants who have been properly joined and served consent to the removal of the action.

18.    In addition, Local 79 has been informed by counsel for Defendant Lend Lease (US) Construction LBM Inc. of an additional basis for removal to this Court—namely, that Plaintiff/Relator's ability to bring these claims against Lend Lease and its affiliates is governed by a prior stipulation and order issued by Judge Preska in *United States v. Lend Lease (US) Construction LBM Inc.*, 09 Civ. 5456, ECF No. 13 (S.D.N.Y. Feb. 7, 2013). Pursuant to that stipulation and order, Plaintiff/Relator is barred from maintaining its claims against Lend Lease and its affiliates; and Judge Preska ordered that the Southern District of New York is the "exclusive jurisdiction and venue for any disputes relating to the Stipulation." *Id.* at ¶¶ 8, 15. Lend Lease will file a notice asserting this additional and independent basis for removal in the coming days, as permitted by 28 U.S.C. § 1446.

19.    A copy of this notice will be filed with the clerk of the Court of the Supreme Court of the State of New York, County of New York.

WHEREFORE, NOTICE IS HEREBY GIVEN that the above-captioned case is removed to the United States District Court for the Southern District of New York.

Dated: October 12, 2018
        New York, New York

Respectfully submitted,

/s/ Joseph J. Vitale

Joseph J. Vitale
Hiram M. Arnaud
COHEN, WEISS AND SIMON LLP
900 Third Avenue, Suite 2100
New York, New York 10022-4869
Telephone: (212) 563-4100
Facsimile:  (646) 473-8238
jvitale@cwsny.com

Tamir W. Rosenblum
MASON TENDERS DISTRICT
  COUNCIL OF GREATER NEW YORK
520 Eighth Avenue, Suite 650
New York, New York 10018
Telephone: (212) 452-9451
trosenblum@masontenders.org

*Counsel for Defendant Local 79*

# EXHIBIT A

Page 8 of 38

At IAS Part _ of the Supreme Court of the State of New York, County of New York, at the Courthouse thereof, located at 60 Centre Street, New York on the _ day of _____, 2018

PRESENT

Honorable _____
                                    Justice

| | |
|---|---|
| STATE OF NEW YORK and CITY OF NEW YORK *ex. rel.* BRIAN ARYAI, | Index No. 108471/2009 |
| Plaintiff, | **SUMMONS** |
| -against- | Plaintiffs designate New York County as the place of trial |
| SKANSKA; TURNER CONSTRUCTION COMPANY; TISHMAN CONSTRUCTION CORPORATION; PLAZA CONSTRUCTION CORPORATION; HUNT-BOVIS; TISHMAN/WASHINGTON GROUP; TISHMAN/HARRIS; PHOENIX CONSTRUCTORS, FLUOR ENTERPRISES, INC., SLATTERY SKANSKA, INC., GRANITE HALMAR CONSTRUCTION COMPANY, INC., AND BOVIS LEND LEASE, LMB, INC. SLATTERY SKANSKA/EDWARDS & KELSEY DESIGN-BUILD; S3 TUNNEL CONSTRUCTORS, SKANSKA USA CIVIL NORTHEAST, SCHIAVONE CONSTRUCTION AND J.F. SHEA; TISHMAN SPEYER; HUNTER ROBERTS CONSTRUCTION GROUP; GRANITE NORTHEAST; INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 14; LOCAL 79 MASON TENDERS' DISTRICT COUNCIL OF GREATER NEW YORK; AND NEW YORK CITY DISTRICT COUNCIL OF CARPENTERS LOCAL 1536, | The basis of venue is CPLR §§ 501, 509 |
| Defendants. | |

**TO THE ABOVE NAMED DEFENDANTS:**

LOCAL 79 MASON TENDERS' DISTRICT COUNCIL
OF GREATER NEW YORK
520 8th Ave #650,
New York, NY 10018

YOU ARE HEREBY SUMMONED to answer the Amended Complaint in this action and

to serve a copy of your answer, or, if the Amended Complaint is not served with this Summons to

serve a Notice of Appearance on the plaintiff's attorney within twenty days after the service of this

Summons, exclusive of the day of service (or within thirty days after the service is complete, if the

Summons is not personally delivered to you within the State of New York); and in case of your

failure to appear or answer, judgment will be taken against you by default for the relief demanded

herein.

Dated: September 13, 2018
New York, New York.

SADOWSKI KATZ LLP

By:  s/Robert W. Sadowski
     Robert W. Sadowski
     830 Third Avenue, 5th Floor
     New York, New York 10022
     Tel: (646) 503-5341
     Fax: (646) 503-5348
     rsadowski@sadowskikatz.com

*Attorneys for Plaintiff*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

STATE OF NEW YORK and CITY OF NEW YORK
*ex. rel.* BRIAN ARYAI,

           Plaintiffs/Relator,

           against.

SKANSKA; TURNER CONSTRUCTION
COMPANY; TISHMAN CONSTRUCTION
CORPORATION; PLAZA CONSTRUCTION
CORPORATION; HUNT-BOVIS;
TISHMAN/WASHINGTON GROUP;
TISHMAN/HARRIS; PHOENIX CONSTRUCTORS,
FLUOR ENTERPRISES, INC., SLATTERY SKANSKA,
INC., GRANITE HALMAR CONSTRUCTION COMPANY,
INC., AND BOVIS LEND LEASE, LMB, INC.;
SLATTERY SKANSKA/EDWARDS &
KELSEY DESIGN-BUILD; S3 TUNNEL
CONSTRUCTORS, SKANSKA USA CIVIL
NORTHEAST, SCHIAVONE CONSTRUCTION
AND J.F. SHEA; TISHMAN SPEYER; HUNTER
ROBERTS CONSTRUCTION GROUP;
GRANITE NORTHEAST; INTERNATIONAL
UNION OF OPERATING ENGINEERS LOCAL 14;
LOCAL 79 MASON TENDERS' DISTRICT COUNCIL
OF GREATER NEW YORK; AND NEW YORK CITY
DISTRICT COUNCIL OF CARPENTERS LOCAL 1536,

           Defendants.

Index No. 108471/2009

**AMENDED *QUI TAM*
COMPLAINT AND JURY
DEMAND**

For this Complaint, the State of New York and the City of New York, by and through

their Relator Brian Aryai ("Relator" or "Aryai"), and by their attorneys, Robert Sadowski, Esq.,

Joshua Weiner, Esq., and Joseph G. Sconzo, Esq., file this Amended *Qui Tam* Complaint against

Defendants Skanska, Turner Construction Company, Tishman Construction Corporation, Plaza

Construction Corporation, Bovis Lend Lease, LMB, Inc., Hunt-Bovis, Tishman/Washington

Group, Tishman/Harris, Phoenix Constructors Joint Venture (Composed of Fluor Enterprises,

Inc., Slattery Skanska, Inc., Granite Halmar Construction Company, Inc., and Bovis Lend Lease,

LMB, Inc.), Slattery Skanska/Edwards & Kelsey Design-Build, S3 Tunnel Constructors Joint

Venture (Composed of Skanska USA Civil Northeast, Schiavone Construction and J.F. Shea),

Tishman Speyer, Hunter Roberts Construction Group, Fluor Enterprises, Granite Northeast,

(hereinafter "Construction Defendants"), and Defendants International Union of Operating

Engineers Local 14 ("Local 14"), Local 79 Mason Tenders' District Council of Greater New

York ("Local 79"); New York City District Council of Carpenters Local 1536 ("Local 1536")

(hereinafter "Union Defendants" or "Unions") (Construction Defendants and Union Defendants

collectively "Defendants").

## INTRODUCTION

1.      This is an action to recover damages, civil penalties, other statutory relief on

behalf of the State of New York ("the State") and City of New York ("the City"), pursuant to the

*qui tam* provisions of the New York State Finance Law Sec. 189 *et. seq.* (the "False Claims Act"),

and pursuant to Section 7-801 *et. seq.* of the New York City Administrative Code.

## SUMMARY OF THE ALLEGATIONS

2.      Relator Brian Aryai, a retired Special Agent of the United States Treasury

Department, a certified public accountant, and a certified forensic and fraud examiner, was the

former Senior Vice President of Finance at Bovis Lend Lease LMB, Inc. ("BLL"). BLL is one

of the leading general builders in the United States and has been the general contractor and/or

construction manager on several State and City funded projects in the New York Metropolitan

Area.

3.      Independently, and together, Defendants Skanska, Turner Construction Company,

Tishman Construction Corporation, Plaza Construction Corporation, Bovis Lend Lease, LMB,

2

Inc., Hunt-Bovis, Tishman/Washington Group, Tishman/Harris, Phoenix Constructors, Slattery

Skanska/Edwards & Kelsey Design-Build, S3 Tunnel Constructors, Tishman Speyer, Hunter

Roberts Construction Group, Fluor Enterprises, Granite Northeast, and Defendants International

Union of Operating Engineers Local 14 ("Local 14"), Local 79 Mason Tenders' District Council

of Greater New York ("Local 79"); New York City District Council of Carpenters Local 1536

("Local 1536") (collectively "Unions"), conspired to knowingly and systematically submit false

and fraudulent payment requisitions to federal, state, and municipal governmental entities. The

payment requisitions contained fraudulent and inflated payroll records by including "gratis pay"

and "ghost pay" for Union workers. Union labor is required on all major construction projects

which are funded in whole or part by federal, state, and municipal governmental entities in New

York.

      4.     As part of the scheme to defraud, and in furtherance of a longstanding agreement

between Defendant Construction Companies and Defendant Unions, Union foreman routinely

submitted two (2) hours per day of overtime to the Defendants, even though the individuals did

not work the overtime hours. Construction Defendants knew of this industry-wide practice,

accepted the fraudulent time records from the Defendant Unions, and then passed those

fraudulent time records on to federal, state, and municipal governmental agencies funding the

projects.

      5.     Relator Brian Aryai, during his employment as Senior Vice President of Finance

at BLL discovered these payments and then independently conducted a comprehensive

investigation into the Union time records and the payment for those fraudulent hours submitted

by Defendants. After confirming the payments for the times submitted, Relator Brian Aryai

3

confronted numerous BLL executives who admitted and confirmed that gratis pay and ghost pay were long-standing industry-wide practices.

6.    Several of the BLL executives confronted by Relator Brian Aryai had also worked for other Defendants, including Union Defendants and Construction Defendants, and confirmed that those Defendants engaged in the practice of knowingly conspiring to submit and submitting fraudulent payment records to federal, state, and municipal governmental entities who funded construction projects those companies were involved in. Additionally, Relator had conversations with executives of several of the Defendant Construction Companies who also verified the industry-wide practice.

7.    Relator Brian Aryai, as part of his comprehensive investigation, independently and voluntarily went directly to job sites to verify the presence, or lack thereof, of the Union employees who were submitting the inflated time records. Through his actions, Relator Brian Aryai confirmed the absence of the Union employee on the job for hours which were submitted by the Defendant Unions for payment.

8.    Upon discovery and confirmation of this fraudulent scheme to defraud federal, state, and municipal governmental entities, Relator Brian Aryai voluntarily provided the accumulated information and results of his investigation to the appropriate federal and state law enforcement and prosecuting agencies. The information was provided to said agencies before the initial Complaint was filed.

9.    Based entirely upon the investigation conducted by Relator Brian Aryai, and the information that was derived therefrom of the industry-wide fraudulent practices, a criminal investigation was opened which resulted in prosecution by the United States Attorney's Office for the Eastern District of New York. As set forth in the Deferred Prosecution Agreements, the

4

Non-Prosecution Agreement, and Press Releases, which are attached as Exhibits to this
Amended Complaint, the United States Government recouped tens to hundreds of million dollars
in fines, penalties, and restitution from some of the largest construction companies in the United
States, including the named Defendants Plaza Construction, Hunter Roberts Construction Group,
Tishman Construction Corporation and Bovis Lend Lease. Bovis Lend Lease settled the federal
and City FCA cases against it with the Federal Government, the City, and the Relator, however
Bovis Lend Lease remains liable to the State and Relator under the State FCA.

<h3 style="text-align:center">PARTIES</h3>

10.     Relator Brian Aryai ("Aryai") is a resident of Tarpon Springs, Florida, and a
former Senior Vice President of Finance of Bovis Lend Lease, a major international construction
firm conducting business in the New York Metropolitan Area. Aryai is a certified public
accountant, certified fraud examiner, and a retired Special Agent of the United States Treasury
Department, who is skilled in conducting forensic analyses and fraud investigations.

11.     Defendant Turner Construction Company ("Turner") is a corporation with an
office located at 666 Third Avenue, New York, New York, and is engaged, *inter alia*, in the
business of construction management and general construction. Turner is one of the leading
general builders in the United States has been the general contractor and/or construction manager
on several State and City funded projects, in whole or in part, in the New York Metropolitan
Area, including the Atlantic Avenue MTA Station Rehabilitation Project in Brooklyn. A
representative sampling of governmentally funded construction projects performed by Turner is
attached as Exhibit A.

12.     Defendant Skanska is a multinational construction company with headquarters
located in Sweden and has an office located at 136 Madison Avenue, New York, New York.

5

Skanska is the sixth largest construction company operating in the United States and Skanska has been the general contractor and/or construction manager on several State and City funded projects, in whole or in part, in the New York Metropolitan Area including the World Trade Center Transportation Hub. A representative sampling of governmentally funded construction projects performed by Turner is attached as Exhibit B.

13.     Defendant Plaza Construction Corporation is a corporation with an office located at 260 Madison Avenue, New York, New York and is engaged, *inter alia*, in the business of construction management and general construction. Plaza is one of the leading general builders in the United States and has been the general contractor and/or construction manager on several State and City funded projects, in whole or in part, in the New York Metropolitan Area. A representative sampling of governmentally funded construction projects performed by Turner is attached as Exhibit C.

14.     Defendant Tishman Construction Company ("Tishman") is a corporation with its headquarters located at 102 N. End Avenue, New York, New York, and is engaged, *inter alia*, in the business of construction management and general construction. Tishman is one of the leading general builders in the United States and has been the general contractor and/or construction manager on several State and City funded projects, in whole or in part, in the New York Metropolitan Area including One World Trade Center, East River Science Project, and Grand Avenue Bus Depot and Maintenance Project. A representative sampling of governmentally funded construction projects performed by Turner is attached as Exhibit D.

15.     Bovis Lend Lease, LMB, Inc. ("BLL") is a corporation with offices located at 200 Park Avenue, New York, New York, and is engaged *inter alia* in the business of construction management and general construction. BLL is one of the leading general builders in the United

6

States and has been the general contractor and/or construction manager on several State and City funded projects, in whole or in part, in the New York Metropolitan Area, including the World Trade Center ("WTC") Memorial and 130 Liberty Street. BLL has settled its federal and City FCA cases with the United States, the City, and Aryai.

16.     Defendant Tishman/Washington Group is a joint venture comprised of Tishman Construction Corporation and the Washington Group. Tishman/Washington Group was the construction manager of the Grand Avenue Bus Depot Project.

17.     Defendant Tishman/Harris is a joint venture comprised of Tishman and Frederick R. Harris. Tishman/Harris was the general contractor on the Whitehall Ferry project.

18.     Defendant Phoenix Construction is a joint venture of Skanska, Fluor Enterprises, Inc., Granite Construction Corporation, and BLL. Phoenix is the construction manager/general contractor on the WTC Transportation Hub project.

19.     Defendant Skanska/Edwards & Kelsey Design—Build ("Skanska/Edwards") is a joint venture comprised of Slattery Corporation, Skanska USA Civil, Inc., and Edwards & Kelsey. Slattery Skanska/Edwards is the construction manager on the Arch Street Yard and Shop Project.

20.     S3 Tunnel Constructors is a joint venture composed of Skanska USA Civil Northeast, Schiavone Construction, and J.F. Shea. S3 Tunnel Constructors was awarded the construction contract for the Second Avenue Subway, which was funded by a combination of Federal Transit Administration grants and local funds provided by the New York State Transportation Bond Act of 2004, and the MTA Capital Program.

21.     Tishman Speyer and Bovis Lend Lease were joint venturers on the construction of the Gotham Center, which was financed through the N.Y.C. Employee's Retirement System and

7

other municipal entities. The demolition of the pre-existing Queens Plaza Municipal Parking at the Gotham Center site was also conducted by the joint venture. Bovis project manager Tony Mannon confirmed to Relator Brian Aryai that the overtime gratis pay scheme was in operation at the site.

22.     Hunt-Bovis Strategic Alliance is a joint venture that provided construction services for the Mets Stadium, known as Citifield. As the head of Finance at Bovis, Relator Brian Aryai toured the Citifield site while it was under construction. Aryai confirmed with the Bovis project manager Tony Mannon that the unworked overtime scheme was part of the billing in certified payrolls submitted for the Citifield stadium construction.

23.     Defendant Hunter Roberts Construction Group is engaged *inter alia* in the business of construction management and general construction. Hunter Roberts is one of the leading general builders in the United States and has been the general contractor and/or construction manager on several State and City funded projects, in whole or in part, in the New York Metropolitan Area. A representative sampling of governmentally funded construction projects performed by Turner is attached as Exhibit E.

24.     Defendant Fluor Enterprises is engaged in the business of construction management and/or general construction and who knowingly submitted fraudulent payroll amounts to a governmental entity for payment. Fluor is constructing the Governor Mario Cuomo Bridge over the Tappan Zee.

25.     Defendant Granite Northeast is engaged in the business of construction management and/or general construction and who knowingly submitted fraudulent payroll amounts to a governmental entity for payment. Granite constructed the temporary subway

8

station inside the WTC construction site. Granite was also contracted to construct the Governor Mario M. Cuomo Bridge over the Tappan Zee.

26.     Defendant International Union of Operating Engineers Local 14-14B provides an annuity plan, which provides an extra retirement benefit to members who have worked in the construction industry. Local 14 also provides pension benefits to qualifying retirees. Local 14 also provides members and their families with medical, hospital, death, prescription drug, dental and vision benefits. Local 14 Fringe Benefit Funds are located at 141-57 Northern Blvd, Flushing, NY 11354. Moneys fraudulently paid for overtime hours that were never worked funded part of these benefits.

27.     Mason Tenders District Council of Greater New York and Long Island Local 79 is a labor union. It has nearly 15,000 members including construction workers, asbestos and hazardous materials handlers, recycling and waste handlers. Local 79, like Local 14, provides benefits that are funded in part by the fraudulent overtime scheme.

28.     The New York City District Council of Carpenters and Joiners of America Local 1536 is comprised of eight Locals with 25,000 union members. Union members are carpenters, millwrights, dock builders, marine divers, core drillers, timbermen, cabinetmakers, floor-coverers and industrial workers. Local 1536, like Locals 14 and 79, provides benefits that are funded in part by the fraudulent overtime scheme.


**JURISDICTION AND VENUE**


9

29.     This Court has jurisdiction over this action since all the Defendants transact

business in New York and have engaged in conduct that they knew would have an effect in New

York.

30.     Venue is proper in this Court pursuant CPLR Section 508(c) because the acts

proscribed by the NYFCA occurred in the County of New York, and Defendants have transacted

business in the County of New York.

## **ALLEGATIONS**

31.     Defendants are major construction companies and Unions who dominate the

multi-billion-dollar construction market in the New York Metropolitan Area. Virtually all their

major construction projects are funded by state, municipal, or federal monies, and Union labor is

a requirement of their contracts.

32.     Defendant Unions supply the labor for the projects in issue and Union payroll

records are routinely submitted to Defendant Construction Companies for payment. After

receiving the payroll records, Defendant Construction Companies then submit certified payroll

records for payment to a federal, state, and/or municipal government entity.

33.     For decades there has existed in the construction industry in the New York

Metropolitan Area, the practice of billing for work not performed by Defendants Union

members. Among other variations on this theme, Union foreman routinely submitted two (2)

hours per day of overtime as part of their remuneration, even though the individuals did not work

the overtime hours. This longstanding and widespread practice, which was put in place by the

Defendant Unions, was well known to Defendant Construction Companies, and they knowingly

accepted these fraudulent time records from the Union and then incorporated those fraudulent

time records into certified payroll reports forming the basis of payment on the projects. This

10

practice has long been referred to as "gratis pay" and Defendant Construction Companies have paid for these "ghost hours" and then recouped these monies from federal, state, and local government funds.

34.     In addition to the two (2) hours of gratis pay which the Union foreman received for these ghost hours, the Defendant Unions received fringe benefits in the amount of 40% to 50% of the amount paid to every foreman which also was well known to Defendant Construction Companies who recouped these monies from federal, state, and/or local government funds.

35.     Defendant International Union of Operating Engineers Local 14-14B provides an annuity plan, which provides an extra retirement benefit to members who have worked in the construction industry. Local 14 also provides pension benefits to qualifying retirees. Local 14 also provides members and their families with medical, hospital, death, prescription drug, dental and vision benefits. Local 14 Fringe Benefits Funds are located at 141-57 Northern Blvd, Flushing, NY 11354. Moneys fraudulently paid for overtime hours that were never worked funded part of these benefits. Local Unions are co-conspirators with Defendant Construction Companies in the gratis pay scheme.

36.     Mason Tenders District Council of Greater New York and Long Island Local 79 is a labor union. It has nearly 15,000 members including construction workers, asbestos and hazardous materials handlers, recycling and waste handlers. Local 79, like Local 14, provides benefits that are funded in part by the fraudulent overtime scheme.

37.     The New York City District Council of Carpenters and Joiners of America Local 1536 is comprised of eight Locals with 25,000 Union members. Union members are carpenters, millwrights, dock builders, marine divers, core drillers, timbermen, cabinetmakers, floor covers

11

and industrial workers. Local 1536, like Locals 14 and 79, provides benefits that are funded in part by the fraudulent overtime scheme.

38.    On or about April 7, 2008, Relator Brian Aryai commenced his employment as Senior Vice President of BLL. Prior to accepting that position, Relator discussed issues within BLL concerning transparency and financial reporting.

39.    Shortly after commencing his employment at BLL, Relator Brian Aryai performed a comprehensive investigation into the financial reporting regarding federal, state, and municipally funded projects and discovered a longstanding systemic fraudulent Union payroll practice which was ongoing. Relator Brian Aryai independently verified and confirmed that these practices were being undertaken by BLL in connection with construction projects in the New York Metropolitan Area.

40.    Every governmentally funded construction project requires general contractors and all subcontractors to submit certified payroll records. For example, the City of New York Office of the Comptroller Bureau of Labor have standardized payroll reports. Certified payroll reports are to be submitted with requisitions for payment. The certified payroll forms serve several purposes and contain important information material to the governmental entity funding the construction project. The payroll report shows the base rate of pay per hour, which base rate must be the prevailing wage rate for the particular type of work performed by laborers, *e.g.,* carpentry.

41.    In addition, the certified payroll identifies the name, address, and last four digits of the social security number of the worker. The form identifies the trade and classification of each worker, *e.g.,* electrician and journeyman or foreman. The form shows the hours worked each day both regular hours and overtime hours. The form shows total hours worked, base rate

12

of pay per hour, total base pay, and rate per hour. The form shows supplemental benefits paid to an identified Union its address, phone number, contract registration number, job code, pay period, project name and location, tax identification number, and the responsible/funding agency.

42.     The certified payroll report contains a certification which, varying somewhat by agency, states: "This certified payroll has been prepared in accordance with the instructions contained on the reverse side of this form. I certify that the above information represents wages and supplemental benefits paid to all persons employed by my firm for construction work on the above project during the period shown. I understand that falsification of this statement is a punishable offense." The certification is signed by an authorized officer of the contractor or subcontractor, dated, and submitted to the responsible funding governmental agency.

43.     In May 2008, while reviewing payroll hours on construction projects, Relator noticed excessive payroll hours submitted for Union workers on BLL's construction projects.

44.     Separately, BLL's Treasurer Brad Robinson at BLL's Shared Accounting Services office in Charlotte, North Carolina, expressed concern to Relator about the validity of the Union payroll in New York and requested an investigation.

45.     Robinson was concerned that there was a fraudulent scheme to pay excessive compensation to Union workers.

46.     As a result of Robinson's and Relator's discoveries and discussions, Robinson agreed to send Relator Union payroll data on a regular basis for Relator's investigation and analysis of questionable Union payroll.

47.     Relator engaged the services of Lillian Aceron, BLL's New York Payroll Manager, and her staff to assist in the investigation of the integrity and accuracy of Union payroll.

13

48.     Around the same time, Jeanne Murphy, BLL's New York Human Resources Director brought to Relator's attention for investigation, an allegation that a Union foreman and his son were being paid for fraudulent "ghost" hours that were not actually worked.

49.     Upon confirmation of the continued and ongoing fraudulent payroll practice that was being perpetrated by BLL, Plaintiff/Relator Brian Aryai emailed and spoke with numerous company executives at BLL, who admitted that the gratis pay practice was a longstanding industry-wide practice and that BLL and the other construction companies and general contractors routinely submitted payment requisitions on publicly funded projects which contained fraudulent payroll records. Several of these BLL employees had previously been employed with other construction companies including Defendants and had knowledge that those Defendants were engaged in this industry-wide practice.

50.     Relator documented these allegations and events on a computer flash drive that he prepared for presentation to the BLL Board of Directors and the United States Government, however, that flash drive was stolen from his office at BLL.

51.     Shortly after these allegations came to light, James Abadie, Principal in Charge of BLL's New York office, and former Union employee, attempted to interfere with Relator's investigation by assigning managers of the Union employees to conduct the investigation. Abadie was an ardent union supporter. Abadie was formerly a construction worker and Union member before he was hired at BLL and rose through the company to become head of its New York office.

52.     Relator continued his investigation and confirmed that the Union payroll was excessive. Both John Voci and Frank Ilyers, Senior Executives a Bovis Lend Lease specifically

14

admitted to Aryai that the practice was in place due to a silent agreement with the Unions and that the companies named as Defendants.

53.     Relator questioned a BLL superintendent John Hyers about Union employee payroll, and Hyers admitted that Union foremen are paid two hours of "gratis pay" per day as part of their salary. Hyers admitted that these "ghost" hours are systemically billed to clients, who would have no knowledge that Union foremen do not actually work the two "ghost" hours added to their true work schedule.

54.     Hyers admitted that the "gratis pay" is an unspoken 25-year-old practice in the New York Metropolitan Area and further admitted that all construction companies using Union labor participate in this method of padding overtime to union employees.

55.     Ultimately, Relator's investigation uncovered 50 Union employee foremen who received "gratis pay."

56.     Relator interviewed Dennis Prude, another BLL superintendent, who confirmed Hyers' admissions about the long-standing practice of all construction companies paying "gratis pay" to Union foremen.

57.     After the interviews of Hyers and Prude, Relator asked Lillian Acerson to identify the Union foremen from BLL's payroll records. Acerson's spreadsheet of this information shows approximately 50 Union foremen who were paid approximately $2,000,000 in gratis pay in 2007. Relator found that the bulk of the gratis pay was paid out of federally, State, and City funded projects. Pursuant to the contracts applicable to each project, Defendants submitted those fraudulent certified payroll records on a regular and periodic basis to federal, State, and/or municipal entities knowing that the governmental entities rely upon those certified payroll records to issue payment on the projects.

15

58.     Relator commenced reviewing the certified payroll submissions on all public

projects and matched those submissions with the hours submitted by union foremen.

59.     Relator also directed Hyers and Prude to cease submitting fraudulent overtime

hours. Relator Brian Aryai was assured by Hyers and Prude, that the company would continue to

pay the Union employees for gratis pay or ghost pay directly from BLL funds without submitting

the fraudulent payroll records to federal, state, and/or municipal government entities for

repayment, thus not exposing the company to further criminal violations. Relator Brian Aryai

then learned that BLL executives, including the Managing Director of BLL's New York office,

devised a scheme whereby the BLL Payroll Manager, who was under the direct supervision of

Relator Brian Aryai, continued the fraudulent billing practice and false submissions to federal,

state, and municipal governmental agencies.

60.     Astonishingly, Hyers insisted that BLL continue paying the Union employees

"gratis pay," but that BLL should fund it rather than charging the project owners.

61.     Relator changed the computerized payroll system to end "gratis pay," and change

it to a transparent "stipend."

62.     In the diligent performance of his responsibilities as Senior Vice President of

Finance at BLL, on three separate occasions Relator conducted surveillance at three specific

project sites in New York and counted and documented the arrival times and departure times of

workers and later matched those observations to submitted payroll hours and confirmed the

existence of gratis pay. Relator verified that the Union workers were not present and yet Union

payroll requisitions were submitted to and paid by BLL for the falsely reported additional hours.

Those payroll records were then submitted to federal, state, and/or municipal entities funding the

16

projects. Specifically, Relator conducted surveillance at New York Presbyterian Hospital, Columbia University, and 130 Liberty Street.

63.     Senior accountant at 130 Liberty Chris Soleberry helped Relator with the logistics and gave Relator information as to where union employees entered and exited the project site.

64.     After Relator's surveillances, he confronted Abadie with his findings. In response, Abadie laughed and said this has been going on for 25 years. Relator concluded that this corrupt and fraudulent practice was accepted in the industry.

65.     Relator again confronted Abadie with Relator's findings. When Relator asked Abadie to explain his understanding of "gratis pay," Abadie became nervous and outraged and stated "you are no longer a Fed and should stop investigating; this is the construction industry and people like you need to fall in line. Had I really known you came from the Feds, I would have stopped your hiring. We are trying to take care of the Union guys and I am not going to let you take money away from them. I am a Union guy too; stop investigating." When Relator told Abadie that "gratis pay" was a payroll fraud against the government in public projects, Abadie responded that "you are obviously connected to the Feds, but I am also connected where it counts in the construction industry."

66.     Abadie confirmed his understanding that the government would probably view the practice as a fraud. Abadie then asked Relator whether he was going to turn in him and the Company.

67.     In mid-July of 2008, Relator and Abadie met, during which Abadie inquired about the union payroll investigation and issued this warning: "This kind of stuff is not going to help your popularity with the boys here who take care of the union guys."

17

68.    Dennis Prude told Relator that the practice of providing union labor foremen with gratis pay was a way to take care of the unions.  Prude referred to the practice as a "sweetener." Prude told Relator that if this fraudulent entitlement program, which went on for years, were exposed and taken away, that would create a lot of intimidation and hostility from the Unions.

69.    BLL internal auditor John Naleppa was aware of the practice of paying gratis pay to Union foremen.

70.    BLL General Counsel Mark Melson was aware of the practice of paying gratis pay to Union foremen.

71.    In October 2008, Aryai personally visited the WTC Transit Hub construction site and after reviewing certified payrolls, interviewing foremen, and surveillance of the site, he confirmed that the gratis pay scheme was in place there.  After conducting these investigative steps, Aryai met with Steven Sommer, a fellow BLL Senior Vice President, who confirmed the that the foremen at this Joint Venture were all paid fraudulent gratis pay regardless of which Joint Venture member put and paid the foremen at work.  The members of the Joint Venture consisted of Skanska, BLL, Fluor Enterprises, and Granite Northeast.

72.    By mid-November 2008, Relator had gathered sufficient evidence to bring his findings to Alex Cockerton.  Cockerton asked Relator for forbearance in releasing a report to the BLL board of directors.

73.    Relator uncovered the "gratis pay" payroll fraud throughout the New York Metropolitan Area in over 150 projects.  These projects were managed by Abadie, Cary Coltun, Anthony Mannion, Dennis Freed, and Steven Sommer, who are the operational directors managing particular segments of the BLL construction business.

18

74.    On December 4, 2009, Christopher Soleberry, Senior Project Accountant on site at 130 Liberty alerted Relator that: (1) BLL billed the project four hours for employees who were not present on the jobsite; (2) BLL billed for 2 hours of overtime for every 8 hours worked; and (3) BLL billed for hours which were not reconciled to the timesheet which flowed to the certified payroll.

75.    Specifically, for example, Defendant Mason Tenders District Union 79 Foreman Mark Beatini's timesheets reflect that for every 8 hours Beatini worked, he was paid 2 additional overtime hours, which he did not work and for which the Union agreement did not justify. Beatini's certified payroll shows he worked 8 hours plus 2 hours of overtime on September 3, 4, 5, 8, and 9, 2008. Beatini's Job Timesheets shows he worked 8 hours plus 2 hours on September 10, 11, 12, 15, 16, 17, 18, 19, 22, 23, 24, 25, 26, 29, and 30, 2008. Attached hereto as Exhibit L are copies of timesheets.

76.    With respect to Defendant Local 1536, on June 23, 24, 25, 26, and 30, 2008, the following union members' Time and Material Daily Work Ticket show they worked 8 hours straight time and 2 hours of overtime: Harry Davis, Jeffery Allen, Ralph Murdough, Michael Culken, Calvin Milligan, Michael Beatty, Jeffrey Jean and Dominick DeLuca.[1] *See id.*

77.    The Time and Material Daily work tickets (Ex. L) used by BLL are slightly different in form and content from the City's form, however, they serve the same purpose and provide the information regarding hours worked by each identified Union laborer. They also contain a certification by the Superintendent Larry Wood and Department Head Dennis Prude. Ex. L. The time sheets are also signed by Bovis employee Dennis Espinoza. *Id.* As part of Ex.

---

[1] Dominick DeLuca is omitted on June 24, 2008, and Michael Beatty is omitted on June 26, 2008. Michael Culken only has 7.5 hours of straight time on June 30, 2008.

19

L, Relator was working with his onsite senior Project Accountant Christopher D. Soleberry to quantify the amount of gratis pay, Mr. Soleberry also communicated with Raymond Kimmelman-DeVries a Bovis Project Manager, who confirmed "discrepancies" with payroll questions. *See* Ex. L at LMB0545081.

78.     Additionally, Plaintiff/Relator confirmed that the Defendant Unions are paid fringe benefits on the fraudulent overtime directly by the Defendant Construction Companies, which is then billed by the construction companies back to the Government (federal, state and local depending on the funding source). These fringe benefits are substantial and represent a large percentage based on the collective bargaining agreement—as much as between 33 to 49 percent. There are also additional contributions that are paid into the pension and welfare funds by the employees.

79.     Aryai's investigation entailed numerous interviews of tradesmen, the results of which formed a basis for the discovery and corroboration of the fraud. In these interviews, Aryai showed foremen and others who were fraudulently paid copies of the certified payroll from various projects and these tradesmen admitted that the addition of two (2) unworked hours was the standard procedure applied in preparation and submission of all certified payrolls.

80.     On or about January 22, 2009, after fully apprising BLL executives of the fraudulent practice of submitting fraudulent certified payroll records which were known to the Defendants to be false and inaccurate to federal, state, and/or municipal government agencies with the intent to obtain payment based upon the false and inaccurate Union payroll, Relator Brian Aryai was terminated from his position at BLL.

81.     Shortly prior to his termination, Relator spoke to executives for several of Defendants, including but not limited to Plaza Construction, James Rosenthal, the former CFO of

20

Tishman Construction, and Mike McNally at Skanska. On these telephone calls, Relator's counterparts verbally confirmed their respective companies' past, current, and future involvement and participation in the gratis pay scheme. Two of the executives from Plaza and Tishman both warned Relator to avoid asking questions about the practice.

82.     On or about February 6, 2009, Relator Brian Aryai personally and voluntarily provided a comprehensive report of his independent investigation into the fraudulent practices and false claims to the former United States Attorney for the Eastern District of New York, Loretta E. Lynch, who at such time was a Partner in the Law Office of Hogan & Hartson. Based upon the information provided by Relator Brian Aryai, and further as a result of Relator's recommendation, Lynch referred the matter to the United States Attorney for the Eastern District of New York. Lynch subsequently returned as United States Attorney for the Eastern District of New York and personally oversaw the prosecutions based upon the information provided by Relator Brian Aryai.

83.     In his report, Relator expressly stated that, during the course of his independent investigation, three separate high-ranking BLL employees verified to him the industry-wide nature of the "gratis pay" scheme.

84.     For instance, John Hyers, a BLL superintendent, informed Plaintiff/Relator that the "gratis pay" scheme was a practice that went back at least twenty-five (25) years in the New York Metropolitan Area, and that all construction companies using Union labor participated in the scheme to pay "padded" overtime to Union employees.

85.     Another BLL superintendent, Dennis Prude, similarly acknowledged the existence of the "gratis pay" scheme and admitted the practice was a longstanding one amongst all the major construction companies operating in the New York Metropolitan Area.

21

86.     In addition, Frank Voci, a senior vice president at BLL, confirmed the existence and widespread prevalence of the "gratis pay" scheme both at BLL as well as the other major New York Area construction companies.

87.     In early June 2010, Aryai met then United States Attorney Loretta Lynch near her office at Cadman Plaza. Among other things, Lynch and Aryai discussed the progress of the investigations into the gratis pay overtime fraud. At that meeting, Lynch confirmed Aryai's investigative findings that the gratis pay overtime fraud was indeed an industry-wide practice. During this same conversation, Lynch stated that the fraud was so pervasive and that the companies Aryai had referred to her for prosecution and the prosecution had required extensive resources that the roll-out of indictments would be staggered probably over several years. During that same conversation, Lynch and Aryai had an exchange of comments about how the United States Attorney's own Office in the Eastern District of New York and the United States Courthouse in Brooklyn were built or renovated in a major construction project with the gratis pay fraudulent overtime scheme.

88.     On or about June 12, 2009, Plaintiff/Relator Brian Aryai filed under seal the original Qui Tam Complaint and Jury Demand in the Southern District of New York. Because Mr. Aryai had brought the Report of Investigation to the United States Attorney in the Eastern District of New York, Mr. Aryai directed his prior counsel to also file his *Qui Tam* Complaint in the Eastern District of New York, so that the criminal and civil investigations could be handled in parallel proceedings. For reasons that are unknown, Relator's prior counsel filed the *Qui Tam* Complaints in the United States District Court for the Southern District of New York and in New York State Supreme. Early in the investigation, the United States Attorney for the Eastern District of New York approached the United States Attorney for the Southern District

22

of New York to have Mr. Aryai's federal *qui tam* transferred to the Eastern District of New York, but the United States Attorney for the Southern District of New York "did not acquiesce" in that request. Attached hereto as Exhibit M is a copy of an e-mail from United States Attorney Lorretta Lynch to Mr. Aryai describing her efforts to transfer the case, the reaction she received, and the extent to which having the civil case pending in the Southern District of New York would curtail her ability to resolve the civil *qui tam* liability. *See* Ex. M. Accordingly, for lack of jurisdiction, the Eastern District of New York could not resolve the civil *qui tam*, or provide a release to the Defendants that was any broader than her jurisdictional authority over the criminal prosecution.

89.     In a subsequent conversation between Relator and USA Lorretta Lynch the following exchange occurred: AUSA Lynch stating: "It's not EDNY's fault that your lawyer didn't follow your instructions and instead filed in the SDNY. He should have known better, especially since you know the process well. Not sure what Nagel (Relator's former counsel) was trying to do. Regardless, your claims will not be adversely affected by the DPAs, because they bind ONLY the EDNY from any further civil action against the Defendants. We can't include the civil part because the SDNY will not work with us."

90.     On April 24, 2012, the United States Attorney's Office for the Eastern District of New York filed criminal fraud charges against BLL and James Abadie, the former principal in charge of BLL's New York Office. Based on the information and substantial assistance provided by Plaintiff/Relator, Abadie pled guilty to conspiracy to commit mail and wire fraud based upon the information provided by Plaintiff/Relator Brian Aryai, while BLL admitted to the participating in the gratis pay practice and entered into a Deferred Prosecution Agreement, the contents of which are incorporated herein by reference and attached hereto as Exhibit F.

23

91.     Subsequently, the United States Attorney's Office in the Eastern District of New York, based upon the information provided by Plaintiff/Relator Brian Aryai, entered into a Deferred Prosecution Agreement with Tishman Construction whereby it admitted to falsely representing and making materially misleading statements and omissions in billing requisitions to the federal government. A copy of this this Deferred Prosecution Agreement is incorporated herein by reference and attached hereto as Exhibit G.

92.     On October 13, 2016, following a federal investigation and the initiation of criminal prosecution, the United States Attorney's Office in the Eastern District of New York entered into a Deferred Prosecution Agreement with defendant Plaza Construction based upon the information provided by Plaintiff/Relator Brian Aryai regarding the systemic and industry-wide false and fraudulent billing practices on government funded projects. This Deferred Prosecution Agreement is incorporated herein by reference and attached hereto as Exhibit H.

93.     Similarly, following a federal investigation and the initiation of criminal prosecution based upon the information provided by Plaintiff/Relator Brian Aryai, the United States Attorney's Office in the Eastern District of New York entered into a Non-Prosecution Agreement with another New York construction company, Hunter Roberts Construction Group, which similarly admitted to falsely representing and making materially misleading statements and omissions in billing requisitions to the government. A copy of this Non-Prosecution Agreement is incorporated herein by reference and attached hereto as Exhibit I. As each of the criminal investigations were announced, Relator's counsel provided the Assistant Attorney General for New York State handling the *Qui Tam* Complaint with the press release, any press articles and the Informations, as well as the Statements and Agreements resolving the criminal prosecutions of the Defendants. *See* Exs. F, G, H, and I.

24

94.    Expressly based on the information provided by Plaintiff/Relator, the United

States Attorney's Office in the Eastern District of New York continues to investigate the billing

practices of the remaining Defendants.

95.    Prior to filing the Amended Complaint in this case, Relator's counsel inquired of

the Assistant Attorney General, who was assigned to the Aryai *qui tam*, whether Relator should

file his Amended Complaint under seal to allow the state to review the claims Hunter Roberts

and the Unions. Attached hereto as Ex. N is a copy of the e-mail communication whereby after

reviewing the Amended Complaint, the New York Attorney General declined to require the

Amended Complaint to be filed under seal.

## COUNT I

## VIOLATIONS OF THE NEW YORK FALSE CLAIMS ACT

96.    Each of the foregoing allegations is realleged and incorporated hereby.

97.    As described in this Amended *Qui Tam* Complaint, Defendants by and through

their officers, agents, and employees, knowingly and intentionally presented to the State or local

government "a false or fraudulent claims for payment or approval" in violation of Section 189

(1) (a); made, or caused to be made, "a false record or statement to get a false or fraudulent claim

paid or approved by the State …" in violation of Section 189 (1) (b); and conspired to defraud

the state or local government by getting a false or fraudulent claim allowed or paid in violation

of Section 189 (1) (c).

98.    Defendants knowingly and intentionally submitted certified payroll records as

accurate when those records contained "gratis pay" and ghost hours of union foreman and other

union workers.

25

99.     Defendants knowingly made false statements and false claims in numerous payment requisitions to the New York State and municipal entities, in violation of the New York False Claims Act Sections 189 (1) (a), (b), (c), and (g).

100.    The State of New York paid such false and fraudulent payroll claims because of the acts or conduct of the Defendants.

101.    By reason of Defendants false or fraudulent payroll records, the State of New York has been damaged in a substantial amount to be determined at trial, and seeks treble damages, civil penalties, costs, and attorneys' fees.

## COUNT II

102.    The allegations contained above are realleged and incorporated by reference as if fully set forth herein.

103.    The City of New York seeks relief against Defendants[2] under Section 7-801 *et. seq.* of the New York City Administrative Code.

104.    Defendants knowingly and intentionally submitted certified payroll records as accurate when those records contained "gratis pay" and ghost hours of union foreman and other union workers.

105.    Defendants knowingly made false statements and false claims in numerous payment requisitions to the New York State and municipal entities, in violation of the New York False Claims Act Sections 189 (1) (a), (b), (c), and (g), and Section 7-801 *et. seq.* of the New York City Administrative Code.

_____

[2] Defendant Bovis Lend Lease has settled its liability to the City under the New York City Administrative Code.

26

106. The City of New York paid such false and fraudulent payroll claims because of the acts or conduct of the Defendants.

107. By reason of Defendants false or fraudulent payroll records, the City of New York has been damaged in a substantial amount to be determined at trial, and seeks treble damages, civil penalties, costs, and attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff, as relator on behalf of the State of New York and City of New York, demands judgment in their favor as follows:

(a) On Count I against the Defendants for an amount to be proved at trial, trebled, plus penalties of $12,000 for each false claim, fees and costs, including reasonable attorneys' fees as set forth in the New York False Claims Act, New York Finance Law, Section 190, and such other and further relief as the Court deems just and reasonable;

(b) On Count II against the Defendants for an amount to be proved at trial, trebled, plus penalties, fees and costs, including reasonable attorneys' fees as set forth in Section 7-801 *et. seq.* of the New York City Administrative Code and such other and further relief as the Court deems just and reasonable.

(c) That Relator recover all costs of this action, with interest, including the cost to the State of New York and the City of New York for its expenses related to this action;

(d) That Relator be awarded all reasonable attorneys' fees and costs in bringing this action;

27

(e) That in the event the State of New York and/or the City of New York intervenes in this action, Relator be awarded an amount for bringing this action of at least 15% but not more than 25% of the proceeds of the action;

(f) That in the event the State of New York and/or the City of New York does not intervene in this action, Relator be awarded an amount for bringing this action of at least 25% but not more than 30% of the proceeds of the action; and

(g) That Relator and the State of New York and/or the City of New York receive all relief to which either or both may be entitled at law or in equity.

28

## JURY DEMAND

Relator hereby requests a jury trial on all issues so triable.

Robert W. Sadowski, Esq.
SADOWSKI KATZ LLP
830 Third Avenue, 5th Floor
New York, New York 10022
Tel: 646) 503-5341
rsadowski@sadowskikatz.com

Joshua L. Weiner, Esq.
BUDD LARNER, PC
150 John F. Kennedy Pkwy
Short Hills, NJ 07078
Tel.:    973-379-4800
Fax.:    973-379-7734
jweiner@buddlarner.com

Joseph G. Sconzo, Esq.*
Law Office of Joseph G. Sconzo, P.A.
250 S. Central Blvd. Suite 201
Jupiter, FL 33458
Tel: 561-781-3000
Fax: 561-781-3001
josephsconzolaw@gmail.com

*Attorneys for Plaintiff/Relator*

By: _____
     Robert W. Sadowski, Esq.

Dated: June 14, 2018

*Pro Hac Vice

29